UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| B&S FARMS OF KASSON, LLC, | Case No. 08-CV-5827 (PJS/JJK) |
| Plaintiff, | |
| v. | ORDER |
| UNITED STATES DEPARTMENT OF AGRICULTURE, | |
| Defendant. | |

Christa M. Van Gundy, ADAMS, RIZZI & SWEEN, for plaintiff.

D. Gerald Wilhelm, UNITED STATES ATTORNEY'S OFFICE, for defendant.

From 1998 through 2000, plaintiff B&S Farms of Kasson, LLC ("B&S") received federal farm-program benefits totaling $155,830.17. Defendant United States Department of Agriculture ("the Agency") later determined that B&S was ineligible for these benefits and demanded repayment. After exhausting its administrative appeals, B&S filed this action seeking review of the Agency's decision.

This matter is before the Court on the Agency's motion for summary judgment. For the reasons given below, the Court grants the motion in part and denies it in part. Specifically, the motion is granted with respect to B&S's defenses of laches and the statute of limitations, but denied without prejudice on the issue of whether substantial evidence supports the Agency's determination that B&S was ineligible for benefits. As the Court explains below, the Agency applied the wrong legal standard in making the eligibility determination. The Court remands the case to the Agency so that it may assess B&S's eligibility under the correct standard.

## I. BACKGROUND[1]

B&S is a limited-liability company formed in 1998 by Darcy Biwer and Paul Sween. Darcy Biwer's husband, Tim Biwer, was B&S's manager during the time period relevant to this action.

In August 1998, B&S applied for federal farm-program benefits by submitting a document entitled "Farm Operating Plan for Payment Eligibility Review for Corporations, Limited Partnerships or Other Similar Entities" ("the Plan"). The Plan said that B&S's members (Darcy Biwer and Sween) would collectively provide 10 percent of the active personal labor and 50 percent of the active personal management of the farm operation. Administrative Record ("AR") 144, 148.

The programs under which B&S sought benefits required that B&S be "actively engaged in farming" during the benefit years. The Agency was required to determine whether B&S was "actively engaged in farming" within sixty days of receiving its application. *See* 7 C.F.R. § 1400.2(e) (1998). In September 1998, the Agency made a preliminary determination that B&S was indeed "actively engaged in farming." This determination continued in force for the years 1999 and 2000 based on B&S's certifications that the Plan filed in 1998 remained true and correct. All told, B&S received $155,830.17 in farm-program benefits before it ceased operations in 2000. AR 146.

In January 2000, Tim Biwer obtained a $1.6 million loan on B&S's behalf from Commercial Federal Bank of Lake Mills, Iowa. Biwer pledged as collateral over 877,000

---

[1]Except where followed by a citation to the record, the following factual summary (which B&S does not dispute, *see* Docket No. 19 at 2) is taken from the Agency's brief in support of its motion.

bushels of grain he claimed was owned by B&S. In reality, B&S only had about one-third of that amount on hand. In 2003, the Agency's Office of the Inspector General ("OIG") became aware of this fraud and began investigating. During the investigation, the Agency obtained evidence suggesting that B&S may not have been eligible for the farm-program benefits that it received from 1998 through 2000. AR 218. Eventually, Tim Biwer was convicted of bank fraud and sentenced in April 2006 to a 24-month term in federal prison. The following month, the OIG advised the Agency that the criminal prosecution of Tim Biwer was completed and that the Agency was free to pursue appropriate administrative remedies against B&S.

In October 2006, after conducting a payment-limitation review of B&S, the Agency notified B&S that it had not been eligible for farm-program payments during the years 1998, 1999, and 2000 due to the failure of Darcy Biwer and Sween to provide the level of "active personal management" required by law. The Agency upheld this decision through multiple layers of review, culminating in a final decision by a Deputy Director of the Agency's National Appeals Division on December 13, 2007. B&S then filed this action for review.

## II. ANALYSIS

### A. Standard of Review

Judicial review of an administrative agency's final determination is governed by the Administrative Procedure Act. 5 U.S.C. § 702; *Mages v. Johanns*, 431 F.3d 1132, 1139 (8th Cir. 2005). An agency decision will be set aside if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A); *Farmers Bank of Hamburg, Ark. v. U.S. Dep't of Agric.*, 495 F.3d 559, 563 (8th Cir. 2007). In deciding whether an agency's decision was arbitrary or capricious, a court must consider whether the decision was based on a

consideration of the relevant factors.  *Minn. Milk Producers Ass'n v. Glickman*, 153 F.3d 632,

643 (8th Cir. 1998).

Courts review an administrative agency's factual findings for substantial evidence in the

record.  5 U.S.C. § 706(2)(E).  "Substantial evidence" means "'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'"  *Pierce v. Underwood*, 487

U.S. 552, 565 (1988) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The

possibility of drawing inconsistent conclusions from the evidence does not mean that the

agency's findings are unsupported by substantial evidence.  *Erickson Transp. Corp. v. Interstate*

*Commerce Comm'n*, 728 F.2d 1057, 1063 (8th Cir. 1984).

### B.  "Actively Engaged in Farming"

To be eligible to receive farm-program benefits with respect to a particular farming

operation, an individual or entity must be "actively engaged in farming with respect to such

operation."  7 C.F.R. § 1400.201(a) (1998).[2]  A limited-liability company such as B&S is

"actively engaged in farming" if:

> (a) The entity separately makes a significant contribution to the
> farming operation of capital, equipment, or land, or a combination
> of capital, equipment, or land; and
>
> (b) The partners, stockholders, or members collectively make a
> significant contribution, whether compensated or not compensated,
> of active personal labor, active personal management, or a
> combination of active personal labor and active personal
> management to the farming operation.  The combined beneficial
> interest of all the partners, stockholders, or members providing
> active personal labor or active personal management, or a

---

[2]All citations to the Code of Federal Regulations in this section of the Court's opinion are
to the 1998 version.  The relevant portions of these regulations were identical from 1998 through
2000, the years during which B&S operated.

combination of active personal labor and active personal management must be at least 50 percent.

7 C.F.R. § 1400.204.

In this case, the Agency does not dispute that B&S met the requirements set forth in subsection (a). In other words, the Agency does not dispute that B&S made "a significant contribution to the farming operation of capital, equipment, or land." The question in this case is whether B&S also met the requirements set forth in subsection (b). Under subsection (b), B&S was required to make a significant contribution of either active personal labor or active personal management (or both).

There is no dispute that neither Darcy Biwer nor Sween provided any active personal labor to the farm operation. The parties likewise agree that Darcy Biwer provided no active personal management to the farm. The only question, then, is whether Sween made a significant contribution of active personal management to the farm operation.

The Agency found that, while Sween may have provided *some* active personal management, he did not provide enough to meet the requirements of § 1400.204(b). AR 149. In other words, the Agency found that Sween did not contribute *enough* active personal management to render B&S eligible for farm-program benefits. B&S disputes that finding, contending that Sween made a critical contribution to the farm by managing both the equipment that he provided to the farm and the financing that he provided to and procured for the farm.

Based on the record before the Court, it seems likely that Sween did not, in fact, provide sufficient active personal management to the farming operation to entitle B&S to receive farm-program benefits. But this decision is the Agency's to make in the first instance, and, in making

its decision, the Agency must apply the correct legal standard.  The Agency failed to apply the correct legal standard in declaring B&S ineligible.

As discussed above, B&S submitted a Plan to obtain farm benefits.  In that Plan, B&S represented that Darcy Biwer and Sween would collectively provide 50 percent of the active personal management.  This 50-percent threshold was not a legal requirement; it was merely a factual representation or estimate of how much of the active personal management of the farm would be provided by Darcy Biwer and Sween.  Throughout the administrative proceedings, however, the Agency latched on to this 50-percent estimate and treated it as though it *were* the applicable legal standard — as though § 1400.204(b) itself required that B&S provide at least 50 percent of the active personal management of the farming operation.  The Agency then found that B&S was ineligible for benefits because B&S did not meet this 50-percent threshold:  "[Sween] may have provided some active personal management, but certainly far less than the 50 percent required under the Plan.  Such lack of proof is fatal to [B&S]'s claim that it was actively engaged in farming."  AR 149.

The problem is that § 1400.204(b) did not require that B&S's members provide 50 percent of the active personal management of the farming operation.  Instead, the regulation merely required that B&S's members make a contribution of active personal management that was "significant."  "Significant" does not necessarily mean "at least 50 percent."  If, for example, Sween had contributed 48 percent of the active personal management of the farming operation, then Sween would not have met "the 50 percent required under the Plan" (to quote the Agency's decision), but he likely would have made a significant contribution of active personal

management. Under those circumstances, B&S would have been eligible for benefits, despite

falling short of the estimates set forth in the Plan.

At oral argument, the Agency conceded that the proper standard — the standard that the

Agency should have applied — was the significant-contribution standard from § 1400.204(b),

and not the 50-percent requirement from B&S's Plan. The Agency nevertheless argued that its

decision should be upheld because, notwithstanding the language quoted above, it did, in fact,

apply the significant-contribution standard from § 1400.204(b).

It is true that the Agency correctly recited the significant-contribution standard from

§ 1400.204(b) and relied on its handbook[3] to define the meaning of "significant contribution."

AR 141-42 (reciting the regulatory standard); AR 142 (citing Farm Servs. Agency, U.S. Dep't of

Agric., FSA Handbook 1-PL (Rev. 1), Amend. 38, ¶ 154, *available at*

http://www.fsa.usda.gov/Internet/FSA_File/1-pl.pdf (last visited Sept. 15, 2009)). It is also true

that the Agency applied the significant-contribution standard in making *some* of its findings, such

as when it discussed the relationship between Sween's financial backing and the profitability of

the farm. AR 149. But the Agency did not rely primarily on the significant-contribution

standard in rendering its decision about B&S's contribution of active personal management.

Rather, the Agency clearly found dispositive the fact that Sween's contribution fell below the 50-

percent threshold mentioned in the Plan. *See* AR 141 ("FSA found that [B&S]'s members, Paul

Sween (Member 1) and Darcy Biwer (Member 2), did not contribute 50 percent of the active

---

[3] The standard from the handbook, to which B&S has not objected, requires that the
contribution of active personal management be "critical to the profitability of the farming
operation, taking into consideration the individual's or entity's commensurate share in the
farming operation." Notably, this standard does not require that members collectively provide
50 percent of the active personal management.

personal management needed for farm program payment eligibility."); AR 148 ("[Sween] would

have had to provide 50 percent of the active personal management to meet regulatory

requirements."); AR 149 ("[Sween] may have provided some active personal management, but

certainly far less than the 50 percent required under the Plan.  Such lack of proof is fatal to

[B&S]'s claim that it was actively engaged in farming.").

The Court cannot say that this error was harmless.  As noted above, a "significant"

contribution is not necessarily a 50-percent contribution.  To be sure, the Agency has the

authority to interpret its own regulations, and the Agency could conceivably interpret the term

"significant contribution" in § 1400.204(b) to mean "at least 50 percent."  (The Court expresses

no opinion on whether such an interpretation would be reasonable.)  But the Agency gave no

indication in its opinion that it was applying such an across-the-board interpretation.  Rather, it is

clear that the Agency simply confused the factual representation in the Plan with the legal

standard in § 1400.204(b).

Because the Agency treated as dispositive a standard that it now concedes does not apply,

the Court will remand this case to the Agency for application of the correct standard.  *See Utahns

for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1164 (10th Cir. 2002) (remand is

appropriate when agency has not considered all relevant factors), *as modified on reh'g*, 319 F.3d

1207 (10th Cir. 2003); *Dantran, Inc. v. U.S. Dep't of Labor*, 171 F.3d 58, 73 (1st Cir. 1999)

(remand is ordinarily appropriate when a reviewing court discovers a serious infirmity in agency

decisionmaking).

*C. Laches*

B&S raises the defense of laches, arguing that the Agency's delay in investigating B&S's

eligibility has prejudiced B&S's ability to defend itself.[4]  "The doctrine of laches is an equitable

defense to be applied when one party is 'guilty of unreasonable and inexcusable delay that has

resulted in prejudice' to the other party."  *Bostwick Irrigation Dist. v. United States*, 900 F.2d

1285, 1291 (8th Cir. 1990) (quoting *Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800, 804

(8th Cir. 1979)).  As a general rule, the defense of laches may not be asserted against the United

States.[5]  *Lee v. Spellings*, 447 F.3d 1087, 1090 (8th Cir. 2006) ("a laches defense may not be

asserted against the government"); *Bostwick Irrigation Dist.*, 900 F.2d at 1291 ("Whatever the

application of this doctrine to private parties, we have recognized the long-standing rule that

laches does not apply in actions brought by the United States.").

Even if the defense of laches were available, B&S could not prevail on it here.  The

Agency became aware of Tim Biwer's fraudulent activities in 2003 and promptly began

investigating.  There is no dispute that, while the investigation and the resulting criminal

proceedings were pending, the Agency was precluded from conducting a payment-limitation

review of B&S.  AR 146.  After the criminal prosecution of Tim Biwer was concluded in

May 2006, the Agency promptly conducted a payment-limitation review and notified B&S of its

---

[4]B&S also initially argued that the Agency's payment-limitations review was barred by the six-year statute of limitations found in 28 U.S.C. § 2415(a).  B&S has now conceded that § 2415(a) is inapplicable and that there is no other applicable statute of limitations.

[5]Some courts recognize an exception to this rule when the Equal Employment Opportunity Commission brings a lawsuit asserting the rights of individual claimants.  *See Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1090 (7th Cir. 1992).  That is not the case here.

adverse determination in October 2006. AR 146. Thus, the delay from 2003 to 2006 was not the fault of the Agency. Further, the "delay" (if it can be called that) from the time that B&S first became eligible in 1998 to the time that the Agency began investigating Tim Biwer in 2003 was not unreasonably long in light of the Agency's sensible practice of permitting new entities to operate for a few years before conducting a payment-limitation review. *See* AR 144.

Finally, B&S did not suffer prejudice from any delay. First, there is no dispute that B&S was on notice from the very beginning that it needed to maintain accurate records in case of an Agency review. *See* AR 272. Second, Sween was well aware in 2003 that there were, as the Agency stated in its findings, "serious issues related to [B&S]'s operation and [Tim Biwer]'s activities." AR 150. Initially, Sween told investigators in July 2003 that he only provided his name and financial statements to B&S for financing purposes and that B&S was, for all practical purposes, Tim Biwer. AR 219. About a month later, Sween abruptly changed his story and sent a letter to the Agency in which he insisted that he was, in fact, actively involved in the management of the farm. AR 219. Sween's letter was a transparent attempt to protect B&S's eligibility for farm-program benefits, and thus Sween was obviously aware of the need to preserve evidence relevant to that issue. B&S cannot credibly argue that it was prejudiced by any delay when it was on notice at least as of 2003 that there were serious questions about whether it would have to return over $150,000 in farm-program benefits. The Court therefore grants the Agency's motion with respect to B&S's defenses of laches.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS

HEREBY ORDERED THAT:

1.    Defendant's motion for summary judgment [Docket No. 11] is GRANTED as to

the issues of laches and the statute of limitations.

2.    The remainder of defendant's motion is DENIED WITHOUT PREJUDICE.

3.    Defendant's motion to strike brief [Docket No. 20] is DENIED.

4.    This matter is REMANDED to the United States Department of Agriculture for

application of the correct standard for determining whether plaintiff was "actively

engaged in farming" during the time period relevant to this action.

Dated:  September 15, 2009                    s/Patrick J. Schiltz
                                              Patrick J. Schiltz
                                              United States District Judge